## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| ERICA A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-cv-16889 |
| v. | ) | |
| | ) | Magistrate Judge Keri L. Holleb Hotaling |
| LELAND DUDEK, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Erica A.[1] appeals the decision of the Defendant Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her disability benefits. For the reasons set forth below, Plaintiff's motion for summary judgment (Dkt. 14) is DENIED, and the Commissioner's motion for summary judgment (Dkt. 17) is GRANTED. The Commissioner's decision is affirmed.

## I.   BACKGROUND

### A.   Procedural History

On January 29, 2021, Plaintiff, applied for disability insurance benefits alleging disability beginning on April 21, 2018. (Administrative Record ("R.") 15, 257-60.) The ALJ held an Administrative Hearing and then issued a March 30, 2023 decision finding Plaintiff not disabled. The Appeals Council affirmed, rendering the ALJ's decision reviewable by the district court under 42 U.S.C. § 405(g) (R. 1-6), and Plaintiff challenges that decision. (Dkt. 1.)

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

### B.    The ALJ's Decision

The ALJ analyzed Plaintiff's claim following the SSA's usual five-step sequential evaluation process to determine whether Plaintiff was disabled during the relevant period. (R. 15-29); *see also* 20 C.F.R. § 404.1520(a). The ALJ found at step one that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2018 and did not engage in substantial gainful activity between her alleged onset date of April 21, 2018 and her date last insured. (R. 17.) At step two, the ALJ identified severe impairments of concussion (mild traumatic brain injury ("TBI")); irritable bowel syndrome; vertigo; major depressive disorder; generalized anxiety disorder; ADHD; and PTSD. (R. 18.) The ALJ decided at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the SSA's listings of impairments (a "Listing") under 20 C.F.R. 404, Subpart P, Appendix 1. (R. 18-20.) In making this determination, the ALJ evaluated Plaintiff's mental limitations and determined Plaintiff had limitations in all four paragraph B criteria, with a mild limitation in understanding, remembering, or applying information, and moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 18-19.) The ALJ also found that the paragraph C criteria were not met. (R. 19.)

Before step four, the ALJ found Plaintiff at the relevant time retained the residual functional capacity ("RFC") to perform light work[2] with exertional limitations (which the Court need not address) and mental limitations to "simple and routine tasks[,] . . . no more than occasional changes in the work setting[,] . . . [no] work requiring a specific production rate such as assembly line work or work [] requir[ing] hourly quotas[,] [and] no interaction with the public in the work

---

[2]     The ALJ did not specify "light" work within the RFC itself, but Plaintiff asserts the ALJ limited Plaintiff to light work (*see* Dkt. 14 at 6), which is consistent with the ALJ determining Plaintiff could have performed jobs classified as "light" work in the requisite time. (R. 28.) It of course would be better practice to identify the exertional level within the RFC itself. Plaintiff does not overtly challenge the ALJ's finding that she could perform light work with the assessed limitations.

setting and no tandem tasks with co-workers." (R. 20, 28.) At steps four and five, the ALJ concluded Plaintiff was unable to perform any past relevant work, but jobs existed in sufficient numbers in the national economy Plaintiff could have performed during the time she was insured, given her age, education, work experience, and RFC. (R. 27-29.) The ALJ therefore found Plaintiff was not disabled during the relevant period. (R. 29.)

### D.    Standard of Review

On review, the Court does not "merely rubber stamp the ALJ's decision." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). That said, "[t]he findings of the Commissioner [] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Prill*, 23 F.4th at 746. Substantial evidence is "more than a mere scintilla," and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). The Court does "'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [the Court's] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). ALJs "are subject to only the most minimal of articulation requirements." *Warnell*, 97 F.4th at 1053. If substantial evidence supports the determination, the Court must affirm even if "reasonable minds could differ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018) (citation and quotation marks omitted).

## II.    ANALYSIS

Plaintiff argues the ALJ: (1) made inconsistent findings regarding restrictions related to Plaintiff's ability to meet quotas; (2) erred in assessing the opinions of the testifying medical expert ("ME"); (3) failed to account for Plaintiff's fatigue; (4) insufficiently analyzed Plaintiff's symptoms; and (5) did not establish significant jobs in the national economy Plaintiff could have performed. The Court addresses Plaintiff's arguments in turn.

### A.   Production Requirements or Quotas

Plaintiff raises a two-pronged argument about the ALJ's restriction regarding production requirements. Clinical psychologist Joseph Steiner, Ph.D., testified as a neutral ME at Plaintiff's Administrative Hearing. (R. 39-40.) He opined Plaintiff had a moderate limitation in the Paragraph B item of concentrating, persisting, or maintaining pace that would have caused some limitations in her ability to function in a work setting during the relevant period. (R. 47.) In particular, she could have done "only [] simple routine tasks," in an "environment of low distractibility," with "low stress, low quotas and pace." (*Id*.) He explained "low quotas" meant "end of day production requirements with no other quotas during the day." (*Id*.) The ALJ indicated his "accept[ance] and adopt[ion]" of ME Steiner's opinion and testimony because he found the testimony "persuasive[,]" and "convincing[,]" and "consistent with" both the medical record and the record as a whole. (R. 24.) In reciting ME Steiner's testimony, however, the ALJ inaccurately stated ME Steiner had opined Plaintiff was restricted to "no end of day production requirements." (R. 22.) Plaintiff insists this misstatement of testimony creates a "material inconsistency" with the ALJ's later conclusion Plaintiff could have performed work with "only end-of-day production quotas" and therefore requires remand (Dkt. 14 at 6 (citing R. 25.) The Court disagrees that the ALJ was required to resolve a conflict created only by a clearly mistaken reference to the neutral ME's testimony.

Plaintiff next argues the foregoing "error" was "compounded" by the ALJ "not including any limitation regarding production requirements" within the RFC. (Dkt. 14 at 6.) Again, the Court discerns no error because the ALJ: (1) did adopt within the RFC the neutral ME's translation of Plaintiff's limitations, which the ME said required "simple and routine" tasks with no "hourly quotas" but with end-of-day quotas; and (2) further limited Plaintiff to no "work requiring a specific production rate such as assembly line work." (R. 20.) While the Court does not mean to suggest that such restrictions will always be sufficient to address any claimant's individual pace

limitations, *see Thea P. v. Saul*, No. 18-cv-8058, 2020 WL 2614853, at *11 (N.D. Ill. 2020) (listing cases and questioning whether, absent "medical opinions on this particular restriction" ALJ appropriately could assume "eliminat[ing] [] strict quotas" was "sufficient to address [] moderate limitations of concentration, persistence, or pace"), here, ME Steiner testified that an end-of-day quota requirement would address *this Plaintiff's* needs. (R. 47.) That testimony, along with the ALJ's recitation of the evidence, provides substantial support for the ALJ's decision here. *See Hess v. O'Malley*, 92 F.4th 671, 678 (7th Cir. 2024) (holding that RFC accounted for moderate limitation in persistence and pace with restriction to "no fast[-]paced production quota or rate"); *Dawn M. v. O'Malley*, No. 22-cv-4424, 2024 WL 3580610, at *4 (N.D. Ill. July 16, 2024) ("Plaintiff's moderate limitations in persistence and pace were adequately addressed by restricting her to jobs with occasional or no variables and work that does not involve hourly production quotas."); *Kevin S. v. O'Malley*, No. 1:23-CV-468-MG-RLY, 2024 WL 1326488, at *6 (S.D. Ind. Mar. 28, 2024) (finding "ALJ provided a logical bridge" because "ALJ's RFC limitations of precluding a production rate pace or meeting strict quota production requirements, but still meeting end-of-day goals appropriately balances the observations of the ALJ and the record evidence"); *Craig C. v. Kijakazi*, No. 21 C 1381, 2023 WL 3763533, at *3 (N.D. Ill. June 1, 2023) ("find[ing] no error" where ALJ adopted consulting physician's "translat[ion]" of Plaintiff's limitations into a restriction to "more simple, routine tasks . . . [n]o fast paced tasks, or strict production quotas," with end-of-day production quotas).

## B.     The ME's Testimony

Plaintiff next ascribes five additional errors to the ALJ's assessment of ME Steiner's testimony. First, Plaintiff says the ALJ failed to "include low quotas"[3] in Plaintiff's RFC. (Dkt. 15

---

[3]     Plaintiff again raises the argument that Plaintiff should have had "no quotas" because of the ALJ's mistaken transcription of the medical expert's testimony. The Court has already disposed of that argument.

at 7.) This is patently incorrect, however, because ME Steiner specifically testified "low quotas" would be addressed by "end of day production requirements with no other quotas during the day" (R. 47), and the ALJ expressly included that restriction within the RFC as noted above. (R. 20.)

Second, Plaintiff argues the ALJ failed to include a restriction to expressly accommodate ME Steiner's opinion Plaintiff required a "low pace" job. (Dkt. 14 at 8.) But the ALJ did include a limitation to "no assembly line work," the apparent purpose of which was to ensure Plaintiff was not placed in a higher-paced work environment. *See Moyer v. O'Malley*, No. 23-2599, 2024 WL 1411565, at *4 (7th Cir. Apr. 2, 2024) (observing "the only objective basis for" limitation "to no assembly-line work" was "the opinion that Moyer could not work jobs with tight quotas or timelines" and that claimant did not "explain how the ALJ's language was inadequate") (citing *Hess*, 92 F.4th at 676, 678 (holding that RFC limiting claimant to no "fast paced production quota[s]" or "assembly line work" accommodates moderate limitations in concentration, persistence, and pace)). In any event, even if the ALJ erred, the error is rendered harmless by Plaintiff's failure to point to record evidence indicating specific restrictions in her capabilities the ALJ did not address and resolve. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).

Third, Plaintiff insists that, because ME Steiner stated he was not "qualified to testify on" Plaintiff's "traumatic brain injury diagnosis . . . since [he is] not a medical doctor" (R. 41), the ALJ erred in adopting ME Steiner's opinions without adding "any TBI related restrictions" to accommodate Plaintiff's related tiredness, low energy, brain fog, and memory lapses from her mild TBI. (Dkt. 14 at 9.) But ME Steiner specifically assessed Plaintiff's overall symptoms, considering notations regarding her average IQ and reasoning scores, college education, along with varied reports of memory and concentration, in determining that her ability to understand, remember or apply information was mildly impaired and her ability to concentrate, persist, or maintain pace was moderately impaired. (R. 46.) The ALJ also fairly recited the evidentiary record, including

ME Steiner's testimony, and his decision was supported by substantial evidence. *See Warnell*, 97 F.4th at 1053 ("In light of the medical evidence contradicting [claimant's] experts, we have no trouble concluding that substantial evidence supported the ALJ's decision to reject them.").

Fourth, Plaintiff latches onto ME Steiner's unadorned concession that Plaintiff's symptoms would "wax and wane" (R. 48) to argue that "fluctuations" in symptoms "can preclude all employment." (Dkt. 14 at 10.) While the latter point is certainly true, the mere fact that symptoms fluctuate does not, standing alone, indicate a claimant is disabled. *See, e.g., Chambers v. Saul*, 861 F. App'x 95, 101 (7th Cir. 2021) (noting that, despite "fluctuating psychological symptoms," claimant's "mental impairments never deteriorated to the point of disabling"). Plaintiff points to no record evidence indicating here symptom fluctuations were severe enough to preclude all employment, much less that the ALJ overlooked any such evidence.

Fifth, Plaintiff argues the ALJ failed to properly assess the consistency and supportability of ME Steiner's opinion, *see* 20 C.F.R. § 404.1520c(b)(2), because the ALJ's reference to those terms amounted to "cursory boilerplate," exemplified by the ALJ's failure to expressly "assess the consistency between ME Steiner's opinion and the opinion from the treating mental health specialist, Dr. Kular." (Dkt. 14 at 11.) The ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," 20 C.F.R. § 404.1520c(a), but must determine the persuasiveness of medical opinions by addressing at least the two most important regulatory factors, supportability (the objective medical evidence and explanation presented by the medical source) and consistency (how consistent the medical opinion is with evidence from other medical and nonmedical sources in the claim). *Id*. § 404.1520c(b)(2)-(c). The ALJ analyzed Dr. Kular's March 31, 2022 statement (R. 25 (addressing R. 598-602)) and January 3, 2023 opinion (R. 25 (citing R. 1200-02)), in which he assessed Plaintiff with marked limitations in two paragraph B criteria—understanding, remembering, or applying information, and

concentration, persistence, or maintaining pace—but found those opinions "not . . . overall persuasive prior to the date last insured." (R. 25.) The ALJ continued by analyzing medical reports and ME Steiner's testimony, correctly noting that "Dr. Steiner had the opportunity to review the entire record available at the hearing level and [] opined the claimant did not have marked limitations . . . prior to the date last insured." (R. 25-26.) Thus, although the ALJ did not, within his discussion of ME Steiner's testimony, address Dr. Kular's contrary opinions, he did address the consistency of the opinions and the consistency of ME Steiner's opinions with the overall record. (R. 24-26.) No more is required of the ALJ. *See Warnell*, 97 F.4th at 1053 (stressing ALJs "are subject to only the most minimal of articulation requirements").

### C.    Plaintiff's Alleged Fatigue

Plaintiff next argues the ALJ failed to account for her fatigue in the RFC. (Dkt. 14 at 11-13.) While an ALJ may not overlook a claimant's symptom reports or descriptions related to fatigue, *see Rebecca A. v. Kijakazi*, No. 21-cv-3185, 2022 WL 16856394, at *3 (N.D. Ill. Nov. 10, 2022) ("In light of Plaintiff's documented issues with fatigue [including physicians noting physical limitations caused by fatigue], the ALJ was required to fulsomely discuss the claimant's fatigue and how it might affect her job performance.") (cleaned up), that does not mean that any and all references to tiredness require a separate accommodation in an RFC. In fact, "courts have found a limitation to light work may accommodate fatigue symptoms." *Thaddeus R. v. King*, No. 24-cv-4395, 2025 WL 405040, at *3 (N.D. Ill. Feb. 5, 2025) (citing cases); *see also Michele M. v. Kijakazi*, No. 20-cv-7749, 2023 WL 3479182, at *3 (N.D. Ill. May 16, 2023) (noting ALJ had "considered numerous references to [claimant's] fatigue in the medical record and testimony and accounted for [those] by limiting her to light work with exertional and non-exertional limitations").

Here, the ALJ iterated Plaintiff's complaints of tiredness during especially busy days or in conversations or loud environments, as well as Plaintiff's reports that her sleep had improved with

medication, and then limited her to light work with exertional and non-exertional limitations to lower stress and prevent public interactions. (R. 21, 23.) Plaintiff notably often described her fatigue as precipitated by certain events or as periodic, occurring at the beginning or ends of days. (*See* R. 428, 432, 435, 439, 442, 444, 447, 471, 496, 520 (many of which repeat, verbatim, a few reports of symptoms); *but see* R. 460, 466, 485, 491, 509 515, (reporting no fatigue)). On the facts here, the Court can trace the ALJ's reasoning in setting a light work RFC with the provided restrictions; without record evidence indicating a specific need not addressed by those restrictions, nothing more was required. *See Thaddeus R.*, 2025 WL 405040, at *3; *Michele M.*, 2023 WL 3479182, at *3; *but see Marilyn G. v. O'Malley*, No. 22-cv-5373, 2024 WL 809088, at *2-3 (N.D. Ill. Feb. 27, 2024) (remanding case where ALJ expressly credited Plaintiff's well-documented fatigue without explaining how the RFC accommodated her fatigue).[4] The Court cannot find, on this record, that the ALJ's conclusion lacks evidentiary support or is so poorly articulated as to prevent meaningful review. *Warnell*, 97 F.4th at 1053 ("All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review.") (cleaned up); *see also Georgia K. v. O'Malley*, No. 23-cv-2179, 2025 WL 240974, at *4 (N.D. Ill. Jan 17, 2025) ("While the ALJ did not set forth a specific discussion on fatigue, she thoroughly considered the impact of Plaintiff's [conditions], both of which cause fatigue. This is not reversible error.").

### D. The ALJ's Subjective Symptoms Analysis

Plaintiff argues the ALJ's subjective symptoms analysis was sub-par because the ALJ did

---

[4] To the extent Plaintiff might mean to argue that the ALJ did not cite every reference to tiredness in the record (Dkt. 14 at 11-12), that is "of no moment where – as here – the ALJ did not ignore an entire line of evidence that is contradictory to his findings." *Thompson K. v. Kijakazi*, No. 21-cv-1298, 2023 WL 7016621, at *7 (N.D. Ill. Oct. 25, 2023) (citing *Gedatus*, 994 F.3d at 901, 903; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

not expressly "consider" all "the numerous factors under" Social Security Ruling 16-3p and the regulations. (Dkt. 14 at 16.) Plaintiff faults the ALJ for not "evaluat[ing]" her "struggles with basic activities" or her treatment course." (*Id.*) But the ALJ expressly discussed Plaintiff's testimony regarding her struggles and her treatment, including medication dosage changes and adjustments— even the ones Plaintiff cites as supporting this argument. (*See* R. 20-21, 22-23.) Plaintiff points to no specific symptom or medication change the ALJ overlooked, and the ALJ's analysis connected the evidence to his conclusion. *See Warnell*, 97 F.4th at 1054 (finding ALJ's explanation "more than sufficient" where ALJ "devoted considerable space to addressing the persuasiveness of [claimant's] experts[,]" "highlighted specific evidence that contradicted her conclusions," and "acknowledged and grappled with conflicting evidence, ultimately concluding that the treatment record as a whole supports a finding of non-disability").

### E. The ALJ's Step 5 Analysis

Plaintiff finally asserts the ALJ did not establish a significant number of jobs existed that could have accommodated Plaintiff's limitations. (*See* Dkt. 14 at 13 (citing 20 C.F.R. § 404.1560(c)(2).) She asserts the ALJ did not meet this requirement because, in Plaintiff's view, none of the three jobs the ALJ identified—routing clerk, DOT No. 222.687-022 (40,000 jobs); marker, DOT No. 209.587-034 (100,000 jobs); or linen grader, DOT No. 361.687.022 (20,000 jobs)—comport with the RFC the ALJ assigned to Plaintiff.

In determining whether there are sufficient jobs, "ALJs typically rely on [a vocational expert ("VE")] to list jobs in the national economy that claimants can perform[,]" *DuCharme v. Kijakazi*, No. 21-2204, 2022 WL 3287974, at *3 (7th Cir. Aug. 11, 2022), and consult "the Dictionary of Occupational Titles" published by the Department of Labor. SSR 00-4P, 2000 WL 1898704, at *1 (Dec. 4, 2000); *see also* U.S. Dep't of Labor, Emp. & Training Admin., Dictionary of Occupational Titles, 1991 WL 645958 (4th ed. 1991) ("DOT"). The ALJ must resolve obvious

conflicts between a VE's testimony and the DOT, but the ALJ's failure to do so does "not merit reversal" when harmless. *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *2-3 (7th Cir. July 22, 2022); *Collins v. Berryhill*, 743 F. App'x 21, 25-26 (7th Cir. 2018); *see also Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (noting that ALJ need only investigate "apparent" conflict between VE testimony and DOT). Here, the ALJ asked the VE to identify positions Plaintiff could perform and asked whether the VE's testimony was consistent with the DOT, which the VE verified; the VE explained that, although some testimony was based upon the VE's "experience with job placement over the past 30 plus years," there was no conflict with the DOT. (R. 55-57.) Plaintiff's counsel declined to question the VE. (R. 57.)

Plaintiff insists the routing clerk job the ALJ identified is inconsistent with her RFC forbidding assembly line work because the job "include[s] conveyor belt type work." (Dkt. 14 at 13-14.) Plaintiff draws this conclusion from the DOT description, which indicates the position "[m]ay be designated according to work station as Conveyor Belt Package Sorter (retail trade)." DOT No. 222.687-022. Although the VE specifically testified that someone with Plaintiff's limitations, including an inability to "perform work that requires a specific production rate such as assembly line work or work that requires an hourly quota," would be able to perform the routing clerk job, the Court assumes that there is an obvious conflict between the description of the position indicating at least a subset of routing clerk positions would conflict with Plaintiff's RFC. Because the ALJ did not inquire of the VE what number of those positions would be available to Plaintiff, in an abundance of caution, the Court excludes that position from consideration. *See Brown v. Colvin*, 845 F.3d 247, 254-55 (7th Cir. 2016) (finding that ALJ could not rely on expert's testimony that some jobs could be performed at exertional level lower than that in the [DOT] but did not specify how many).

11

Plaintiff next deems the "marker" position inconsistent with her assessed RFC providing for no interaction with public in the work setting because "[t]he DOT job description notes [the job] may be in a retail store, attaching price tickets to merchandise," which, if performed "on the retail floor[,] would involve at least incidental contact with the public." (Dkt. 14 at 14.) The VE, though, specifically testified a person who could have no public interaction in the work setting could perform the marker position, and here, the Court discerns no "apparent" conflict between that testimony and the DOT because the DOT job description does not suggest that product marking would be public facing or performed "on the retail floor." *See* DOT No. 209.587-034. Plaintiff's counsel declined to question the VE and thus cannot prevail absent such an apparent conflict between the VE testimony and the DOT. *See Berlinda G. v. Kijakazi*, No. 19-cv-6614, 2021 WL 4819496, at *4 (N.D. Ill. Oct. 15, 2021) ("Because [Plaintiff] did not identify any conflict at the hearing, she would have to show that the conflict was 'obvious enough that the ALJ should have picked up on [it] without any assistance.'") (citation omitted, alteration in original). Plaintiff also attacks the continued viability of the "marker" position in modern times but has forfeited that argument as well.[5] *See Kameka B. v. Kijakazi*, No. 21-cv-860, 2022 WL 3154207, at *3 (N.D. Ill. Aug. 8, 2022) (noting that Plaintiff forfeited argument regarding obsolescence of job by not raising it with VE).

Plaintiff finally challenges whether she could have performed the linen grader position; in her view, that job requires working in "tandem" with a laundering coworker. (Dkt. 14 at 15.) Again, though, the VE testified that the position did not involve tandem tasks, and Plaintiff's counsel asked no questions of the VE. (R. 56, 57.) There is nothing in the DOT to suggest that a grader or sorter of linens necessarily works in tandem with a coworker who launders the items as

---

[5]    The Court notes that this job title was not listed in the SSA's Emergency Message, "EM 24027," dated June 22, 2024, which identified jobs that may not be performed today in the way the DOT describes.

Plaintiff assumes. Absent such an overt conflict (or Plaintiff having raised the argument with the VE), the ALJ was not required to inquire further. *Terry*, 580 F.3d at 478.

Tallying the numbers of marker and linen grader jobs the ALJ found were available yields 120,000 jobs, nationally, available to Plaintiff. That is unquestionably a significant number in the national economy. *See Milhelm v. Kijakazi*, 52 F.4th 688, 696-97 (7th Cir. 2022) (noting "numbers of national jobs held to be significant by other circuits" were 32,000 in the Sixth Circuit, 25,000 in the Ninth Circuit, and 10,000 and 32,000 in the Eighth Circuit) (citation omitted); *DuCharme v. Kijakazi*, No. 21-2204, 2022 WL 3287974, at *3 (7th Cir. Aug. 11, 2022) ("We've already affirmed an ALJ's finding that 30,000 jobs was sufficient, [], and other courts have held that similar numbers fit comfortably within what courts have deemed significant.") (cleaned up). Accordingly, the ALJ's finding at step 5 is supported by substantial evidence even excluding the routing clerk job. *See Brown*, 845 F.3d at 255 (finding ALJ's error in relying upon unsupported VE testimony on one job title was harmless due numbers of jobs in remaining job titles ALJ found were available to claimant); *Cody M. v. O'Malley*, No. 1:23-cv-366-MG-JRS, 2024 WL 1326489, at *6 (S.D. Ind. Mar. 28, 2024) (holding that ALJ's decision was supported by substantial evidence in form of medical evidence and VE testimony even after court excluded two jobs from consideration due to inconsistency with RFC).

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 14) is denied, and the Commissioner's motion (Dkt. 17) is granted. The decision of the Commissioner is affirmed. Civil case terminated.

ENTERED: March 21, 2025

_____

Hon. Keri L. Holleb Hotaling
United States Magistrate Judge